Cooper and others vs. Cleghorn and others.

Cooper and others vs. Cleghorn and others.

*August 31 — September 21, 1880.*

EVIDENCE. *(1, 2) Written contracts not controlled by previous or simultaneous oral agreements.*
SALE OF MILL MACHINERY: LIEN. AGENCY. *(3) When title passed: Vendor's lien on the mill. (4) How far vendors liable for mistakes of mill-wright furnished by them.*

| 50 | 113 |
|----|-----|
| 74 | 888 |
| 50 | 113 |
| 77 | 474 |
| 50 | 113 |
| 104 | 190 |
| 50 | 113 |
| 108 | 624 |
| 50 | 113 |
| 111 | ³574 |

1. A written contract cannot be varied or controlled by parol agreements between the parties made previous to, or simultaneously with, its execution.
2. The contract provided that plaintiff should furnish defendant certain burr mill stones "*faced and furrowed;*" and it clearly appears that plaintiff furnished such stones, and that the words "faced and furrowed," as used among millers, did not imply that the stones should be dressed and in a condition to use. *Held,* that it was incompetent for defendants to show that, from conversation with one of the plaintiffs prior to the execution of the contract, they were led to suppose that stones which were faced and furrowed would be dressed and in condition for immediate use.
3. Plaintiffs agreed to sell to defendants for their grist mill, in this state, certain described machinery, including an engine and boiler; also the necessary plans, drawings and specifications and bills of material, and the necessary time of a competent mechanic to superintend the erection of said engine and boiler, and the time of "a competent mill-wright" to superintend the erection of the other machinery; said machinery to be ready for delivery at plaintiffs' iron works at Mt. Vernon, Ohio, on the 20th of July, 1875; said sale to be made upon the payment by defendants of $8,400 as follows: $400 by June 1, 1875, $5,000 on or before the shipment of the machinery, and the balance four months thereafter. Plaintiffs agreed to deliver the machinery, boxed and in good order for transportation, at the depot at Mt. Vernon; and it was further agreed that "the title, ownership and right of possession of the aforesaid machinery shall remain in the first party (the plaintiffs) until the cash is paid as above agreed, when the same shall vest in the party of the second part." *Held,* that, the machinery having been so affixed to the mill that it cannot be removed without material injury to the realty, and this having been done by the act of defendants, and pursuant to the intention of the parties when the contract was entered into, plaintiffs, treating the transaction as a sale of the machinery, may enforce a *lien on the buildings* for the amount still due them under the contract.

VOL. L. — 8

4: If it appeared that the mill-wright furnished by plaintiffs under the contract was a perfectly "competent" one, and yet that he made serious mistakes in superintending the work, *quære* whether plaintiffs would be responsible therefor, or whether such mill-wright would be deemed defendants' agent and employee in superintending the work.

APPEAL from the Circuit Court for *Rock* County.

Action to recover the balance due upon a written contract, and to enforce the same as a mechanic's lien. The contract was dated May 18th, 1875; and by the terms thereof the plaintiffs promised and agreed to sell to the defendants, for their grist mill, certain machinery described in the agreement and specifications accompanying it, including, among other things, an engine, the cylinder of which was to be cased with black walnut; a boiler, with 66 flues; four runs of French burr mill stones, faced and furrowed; four silent feeders; one No. 3 Barnard separator; "two middlings purifiers to be selected by the concurrent act of the parties; one wheat scale to weigh 3,600 pounds; one packing scale; one platform scale; also all of the necessary shafting, gearing, pulleys, iron boxes, gudgeons, belting, bolting cloths of Dufour & Co.'s best brand, elevator cups, conveyor flights, machinery to make a complete four-run flouring mill, according to the plans and specifications. It is understood the said mill is to have three runs of stone for grinding wheat and middlings, and one for grinding feed; six bolting reels, and a sufficient number of elevators to do the necessary elevating in the mill." The plaintiffs further agreed to furnish the necessary plans, drawings and specifications and bills of material, and the necessary time of a competent mechanic to superintend the erection of said engine and boiler; also the time of a competent mill-wright to superintend the erection of said machinery and the mill-wright work. The contract also contained the following provisions:

"Said machinery to be ready for delivery at Mt. Vernon Iron Works, Mt. Vernon, Ohio, on or about the 20th day of July, 1875; said sale to be made upon the payment by the

said second party of the sum of $8,400 as follows:    $400 by June 1st, 1875; $5,000 on or before the shipment of the machinery; and the balance in four months from date of shipment of said machinery, on or about July 20th, 1875.    The first party agree to deliver the machinery, boxed and in good order for transportation, at the said depot at Mt. Vernon, Ohio.    In case of any defects in the material or workmanship of said machinery, said *C. & G. Cooper & Co.* are to make the same good at their shop without charge; and should it not perform as well as customary for machinery of like size and proportions, the second party are to notify and give the first party reasonable notice and a chance to make the same perform in a proper manner.  .  .  .

.  .  .   It is further agreed that the title, ownership and right of possession of the aforesaid machinery, shall remain in the above first party until the cash is paid as above agreed, when the same shall vest in the party of the second part."

The complaint sets forth the contract, and alleges due performance thereof, except that, by the consent of the defendants, certain changes were made in the machinery furnished. It further alleges that plaintiffs furnished extras, at the request of the defendants, worth $116.25; that defendants had not paid for the same, and had failed to pay $2,917.29 of the sum due by the terms of the contract; that the machinery furnished and the extras, except $20 in value thereof, were put in and about the defendants' grist mill, and became a part of said premises as fixtures thereto; and that a petition for a lien had been duly filed.

The answer admits the execution of the contract, and alleges certain defects and deficiencies in the machinery furnished, by reason of which the defendants were damaged to the amount of $8,000.    It states, among other things, that they were unacquainted with mill machinery and the terms used to express the same; that plaintiffs represented the words "faced and furrowed," as used in the contract with reference to the mill

stones, to mean that such stones would come ready for use; and that they were not ready for use, but required an outlay of $500 to make them so.

The evidence tended to show, among other things, that the engine and boiler were improperly set up; and that the plaintiffs did not furnish six bolting reels, but that the frames for such reels were made by the defendants at a cost of $18 each.

Testimony was also introduced in support of the allegations of the answer as to the mill stones, and the representations of the plaintiffs with regard to the meaning of the words "faced and furrowed."

The court found as facts, that the agreement above mentioned and the specifications accompanying it together constituted the only contract between the parties, and that the plaintiffs had, with certain exceptions, fully performed the contract. The exceptions were as follows: they furnished a boiler with 64 instead of 66 flues, but one equally good and received by the defendants without objection; instead of a No. 3 Barnard separator, they furnished a No. 2, which was received by the defendants without objection; instead of one of the four silent feeders, they furnished a " damsel and shoe," which was accepted by the defendants without objection; in lieu of two middlings purifiers, they furnished one large purifier by mutual agreement of the parties; the engine cylinder was cased with brass instead of black walnut, with the knowledge and approval of the defendants; by agreement, the scales were furnished by defendants at a cost of $216.45, for which sum and for $170.84 freight paid by them the defendants were entitled to credit on the contract. The court further found that the plaintiffs furnished extras to the value of $116.50; that all the machinery and material furnished in accordance with the contract, and all the extras except a dozen mill-picks of the value of $20, were so used and employed in and about the erection and construction of the mill as to become fixtures; and that defend-

ants were entitled to credit on the contract by payments amounting to $5,582.70.

As conclusions of law the court held, that there was due to the plaintiffs on the contract and for extras, over and above all payments and set-offs, the sum of $2,933.55, and interest, amounting in all to $3,635.16; and that of such sum $3,610.37 was a lien upon the mill.

From a judgment in accordance with these conclusions, the defendants appealed.

For the appellants there was a brief by *Bennett & Sale*, and oral argument by *Mr. Bennett*. They contended, *inter alia:* The court erred in finding that the machinery and materials furnished became fixtures, and that the plaintiffs had a lien upon the mill. The agreement between the parties did not amount to a sale of the machinery, but was simply an agreement to sell. The title, ownership and right of possession were to remain in the plaintiffs until payment was made as agreed. Such payment was strictly a condition precedent, and, as it was never made, the right of property never vested in the defendants. *Porter v. Pettengill,* 12 N. H., 299; *Sargent v. Gile,* 8 id., 325; *Gambling v. Read,* 1 Meigs, 281; *Bigelow v. Huntley,* 8 Vt., 151; *Barrett v. Pritchard,* 2 Pick., 512; *Smith v. Lynes,* 1 Seld., 41; *Ayer v. Bartlett,* 9 Pick., 156; *Bennett v. Simms,* 1 Rice, 421; *Coggill v. R. R. Co.,* 3 Gray, 545; *Herring v. Hoppock,* 3 Duer, 20; *Brewster v. Baker,* 20 Barb., 364; *Parris v. Roberts,* 12 Ired. Law, 268; *Smith v. Foster,* 18 Vt., 182; *Buckmaster v. Smith,* 22 id., 203; *Root v. Lord,* 23 id., 568; *Davis v. Bradley,* 24 id., 55; *Buson v. Dougherty,* 11 Humph., 50; *Copland v. Bosquet,* 4 Wash. C. C., 594; *Lamond v. Davall,* 9 Q. B., 1030. The machinery, therefore, never became a part of defendants' freehold, but remained the personal property of the plaintiffs. *Godard v. Gould,* 14 Barb., 662; *Kelsey v. Durkee,* 33 id., 410; *Cresson v. Stout,* 17 Johns., 116; *Walker v. Sherman,* 20 Wend., 636; *Gale v. Ward,* 14 Mass., 352; *Swift v. Thomp-*

*son*, 9 Conn., 63; *Globe Marble Mills Co. v. Quinn*, 19 Alb.
L. J., 260; *Kinsey v. Bailey*, 9 Hun, 452; *Sisson v. Hibbard*,
10 id., 420; *Dubois v. Kelly*, 10 Barb., 496; *Smith v. Benson*,
1 Hill, 176; *Farrer v. Chauffetete*, 5 Denio, 527; *Ford v. Cobb*,
20 N. Y., 344; *Wintermute v. Light*, 46 Barb., 278; *Howard
v. Fessenden*, 14 Allen, 124; *Keogh v. Daniell*, 12 Wis., 173.
And the plaintiffs could have no lien for its value upon the
mill property. Tay. Stats., 1762, § 1; R. S., sec. 3314; *Hun-
ter v. Warner*, 1 Wis., 141; *West v. Bolton*, 4 Vt., 558. It
has been held that asking independent security for the price
of an article sold, is a waiver of the lien. *Johnston v. Union
Bank*, 37 Miss., 526. Also, that the lien of a mechanic is
discharged by an agreement on his part to look to the personal
credit of the debtor or another, for satisfaction of his demand.
*Bailey v. Adams*, 14 Wend., 201; *Brown v. Gilman*, 4
Wheat., 255, 291; 1 Mass., 214; 3 Jones & S., 542; 1 Hilt.,
293; 18 Wall., 623. In this action the plaintiffs have bar-
gained for their security, by providing in the contract that the
"title, ownership and right of possession" of all the machinery
shall remain in themselves, and shall not vest in the defend-
ants until the payments are made. Liens are not to be
extended by construction. *Brown v. Gilman*, 4 Wheat., 255;
*Taylor v. Baldwin*, 10 Barb., 626; *McFarland v. Wheeler*,
26 Wend., 467. 2. The court erred in not allowing to defend-
ants the cost of making the frames of the six bolting reels,
the same not having been furnished by the plaintiffs in accord-
ance with the contract. Plaintiffs were also liable on their
warranty for the defective manner in which the machinery
was constructed and set up. 3. The court should have allowed
to the defendants the amount necessarily expended by them in
making the mill stones ready for use. It was competent to show
by parol evidence what "faced and furrowed" meant. And
for this purpose, proof of the declarations of the parties, made
at the time, of their understanding of those words, was admis-
sible. *Ganson v. Madigan*, 15 Wis., 144; 1 Greenl. Ev.,

§ 280; *Emery v. Webster*, 42 Me., 204; *Waterman v. Johnson*, 13 Pick., 261; *Reay v. Richardson*, 2 C., M. & R., 422; *Hall v. Davis*, 36 N. H., 569; *Baldwin v. Carter*, 17 Conn., 201; *Mech.'s Bank v. Bank of Columbia*, 5 Wheat., 326. And such declarations, satisfactorily established as they were in this case, are the strongest and most conclusive evidence of the intention of the parties. *Ganson v. Madigan, supra.*

For the respondents there was a brief by *Cassoday & Carpenter*, and oral argument by *Mr. Cassoday:*

The contract in suit was specifically found by the court to be wholly in writing, and to this finding there was no exception. It requires no citation of authority to show that the court below was correct in not allowing any alleged prior or contemporaneous agreement to be engrafted upon or injected into this written contract.

There was a completed sale of the machinery, and the plaintiffs acquired a lien upon the mill property. 1. The provision in the contract that the title should remain in the plaintiffs "until the cash is paid," when taken in connection with the terms of payment, shows that the title was to pass when the *cash* payments of $5,400 were made, and that defendants were to have a credit of four months in which to pay the balance. The very idea of a credit being given for such balance implied a sale. There could be no credit without a debt, and no debt without a sale. 2. A lien attaches and is enforced by reason of a legal or equitable right to follow the specific property, so that, even if the literal construction of the contract were, that the passing of the absolute title was conditioned on making the deferred payment, yet that would not be a relinquishment of any equitable right to the property, much less a waiver of the lien thereon for the balance of the purchase money. It would be entirely unlike the looking to other outside property for security. Such clause, so construed, instead of being a waiver of plaintiffs' right to proceed *in rem* against this property, gives them an additional right

to so proceed.  3. Defendants have relied upon the warranty contained in the contract.  A warranty is an incident only of a completed sale; it has no present validity or force in an executory contract.  *Osborn v. Gantz*, 60 N. Y., 540.  Defendants, therefore, have elected to consider the sale as completed, and are bound by the position thus taken.  Bigelow on Estoppel, 578, 579; *Rodermund v. Clark*, 46 N. Y., 354; *Smith v. Smith*, 14 Gray, 532; *Stockton v. Wooley*, 20 Ohio St., 184.  They cannot be heard to urge their own laches in failing to make payment for the purpose of defeating plaintiffs' remedy by way of lien.

COLE, J.  No principle of law is better settled than that a written contract cannot be varied or controlled by parol agreements or understandings between the parties made previously to or simultaneously with the execution of the written contract.  " When parties have deliberately put their engagements into writing, in such terms as import a legal obligation, without any uncertainty as to the object or extent of such engagement, it is conclusively presumed that the whole engagement of the parties, and the extent and manner of their undertaking, were reduced to writing; and all oral testimony of a previous *colloquium* between the parties, or of conversation or declarations at the time when it was completed, or afterwards, as it would tend, in many instances, to substitute a new and different contract for the one which was really agreed upon, to the prejudice, possibly, of one of the parties, is rejected." 1 Greenl. Ev., § 275.  It is necessary to do little more than call attention to this elementary rule of evidence to dispose of some of the exceptions relied on by the learned counsel for the defendants for a reversal of the judgment.

The circuit court found, as a fact in the case, that the written agreement and written specifications constituted the only contract entered into between the parties.  We do not understand that the finding on this point is excepted to, or seriously

questioned. We must therefore determine the rights and obligations of the parties by the written contract, which is not of doubtful or uncertain import.

The plaintiffs claim a mechanic's lien on the grist mill and warehouse for the amount due them on the contract for the materials and machinery furnished and put into these buildings. It is objected that they are not entitled to such lien because the machinery was not so erected or attached to the buildings as to become fixtures. That all the machinery furnished, except the corn-sheller, has been substantially and permanently attached to the lands and buildings, cannot, in view of the testimony, well be denied. This machinery consisted principally of a stationary steam engine, boiler and fixtures, millstones, and such other machinery as was necessary for the complete equipment and operation of a steam grist mill. All except one article has been so annexed to the buildings that it cannot be removed without material injury to the realty. The fact of the actual physical annexation of the property to the mill, which is a building set in an excavation of some six feet, on a heavy stone foundation, is indisputable. The machinery has surely lost its character as chattel property, unless the clause in the contract which provides that the title, ownership and right of possession of the machinery shall remain in the plaintiffs until the cash payments stipulated for were made, prevents it from becoming fixtures.

The counsel for the defendants contends that this clause does have that effect; that though all the machinery has, in fact, through the agency of the defendants, become permanently annexed to the freehold, still it is not to be treated as a part of the realty, because the title was to remain in the plaintiffs, which must defeat the lien. We do not think any such effect should be given the clause in question. The provision was, manifestly, inserted in the contract for the benefit of the plaintiffs; was intended to secure promptness in making the cash payments; and it ought not to be construed as

abridging the rights of the plaintiffs, or depriving them of their lien. They do not claim the right to remove the property, which has become affixed to the freehold pursuant to the intention of the parties when the contract was entered into, and with the active coöperation of the defendants. The plaintiffs treat the title as having vested in the defendants by its annexation to the realty; and it surely does not lie in the mouths of the defendants, under the circumstances, to say that the property has not become a fixture. The equity and justice of this view are too obvious to require further illustration. It is true, the corn-sheller has not been so attached to the other machinery and building that it cannot be removed; but it was intended to be permanently attached, and would have been but for the neglect of the defendants. There is, therefore, no hardship in this case in treating it as a part of the machinery actually fastened to the freehold, inasmuch as it was furnished and designed to be used in connection with the warehouse. If the defendants could have fixed upon the location of the sheller, it probably would have been attached to the other machinery in the fall of 1875.

We are disposed to regard the contract as a sale of the machinery, and that the reservation of the title until the cash payments were made did not have the effect of changing its character to a mere agreement to sell, as contended for by defendants' counsel.

We now reach the inquiry: Did the plaintiffs substantially keep and perform the contract on their part? The circuit court found, upon the evidence, that they did, except in certain particulars mentioned. Instead of a boiler with sixty-six flues, as agreed and stipulated for, they furnished one with sixty-four flues only. But the court finds, and such is the clear weight of the testimony, that the defendants, with full knowledge of the difference, accepted the boiler furnished, without objection, as a compliance with the contract. Any objection that the plaintiffs did not perform their agreement

in respect to the boiler, was waived. The same remark applies to the separator, about which there was some objection made on the argument. A No. 2 Barnard separator was furnished instead of a No. 3, stipulated for in the contract. The one furnished was accepted without objection. It is true, the separator furnished would not separate oats from wheat, nor do the work which the defendants supposed it would do when the contract was made, and they exchanged it for another machine. But that the separator furnished was what was known in the market as the Barnard warehouse separator, and had the capacity stipulated for in the contract, is a fact abundantly established by the testimony. The court further found that the defendants accepted, without objection, as a compliance with the contract, a damsel and shoe and three silent feeders instead of four feeders; one large purifier instead of two middlings purifiers; a brass casing of the cylinders of the engine instead of a black walnut casing; and these findings are fully warranted by the weight of evidence.

By the contract plaintiffs agreed to furnish "four runs best quality of four-foot old-stock French burr millstones, *faced and furrowed*." Such stones were actually furnished, but the defendants sought to show by parol that, from conversation with one of the plaintiffs prior to the execution of the contract, they were led to suppose that stones which were "faced and furrowed" would be in a condition for immediate use — that is to say, would be dressed; whereas it was necessary to expend $500 in rendering them fit to use. It clearly appeared that the words "faced and furrowed," among millers, did not imply that the stones would be dressed and in a condition to use. It is evident that the defendants sought to add to and vary the written contract by showing previous negotiations and understanding of the parties as to the meaning of the words." faced and furrowed." This evidence was inadmissible under the rule referred to at the commencement of this opinion. The defendants did not allege a mistake in the con-

tract and seek its reformation.   They attempted to add to it by showing that they supposed the stones were to be dressed. It is plain that they could not do this.   *A fortiori*, any parol evidence offered to show that the plaintiffs agreed to furnish a cob-carrier was plainly incompetent.   There was nothing in the written contract about a cob-carrier.

It is further insisted that among the machinery which was to be furnished by the plaintiffs were " six bolting reels," which were not provided by them, but the frames were made at the mill by defendants.   It is said that the defendants should be allowed the expense of making these frames.   The bolting-reel frames were a part of the carpenter and joiner work, which the plaintiffs did not undertake to do.   Certain it is that in the specifications six bolting reels are mentioned; but from the connection we are satisfied that the words are used only for the purpose of fixing the amount of bolting cloth of Dufour & Co.'s best brand, and of the iron work, the plaintiffs agreed to furnish.   The meaning of the specifications is, that there was to be enough of the things designated under the general description to furnish among other things six bolting reels.   This is all we think the specifications amount to on this point.

In some other respects the defendants claim that there were defects in the machinery provided, or in the work done under the superintendence of the mill-wright furnished by plaintiffs to see to the erection of the machinery in the mill.   By the contract the plaintiffs agreed to furnish a competent mill-wright to superintend the erection of the machinery, work and mill; the defendants agreeing to pay his traveling and boarding expenses, and not to exceed $5 a day for his services. It is very clear that the mill-wright furnished was a per-fectly competent one, and if he made any serious mistakes in superintending the work, it is doubtful if the plaintiffs would be held responsible for them.   In superintending the work he might be deemed the agent and employee of the defendants.

See *The Monitor Iron Works Co. v. Ketchum*, 44 Wis., 126; *S. C.*, 47 Wis., 177. But, however that may be, we are satisfied from the evidence that the mill-wright made no serious mistakes in superintending the work. And, on the whole record, we agree with the court below in the conclusion that the testimony shows a substantial performance of the contract on the part of the plaintiffs. Besides, it must be borne in mind that, by the terms of the contract, it was expressly provided that in case of any defects in the material or workmanship of the machinery the defendants were required to give the plaintiffs reasonable notice thereof, and afford them an opportunity to repair the defect. The letters of the defendants furnish most conclusive proof that no notice of any kind was given of any defect or failure of the machinery to perform to their satisfaction, except that the warehouse separator would not separate oats from wheat, and that there was no cob-carrier with the sheller. But these matters complained of did not show any failure to perform.

It follows from these views that the judgment of the circuit court must be affirmed.

*By the Court.* — Judgment affirmed.