## Dimmick *versus* Cook Co.

115  573
134  566
115      573
28 SC ¹267

1. In the construction of a building for a hotel, everything of a permanent character which will pass as a part of the freehold, and which is reasonably necessary to equip it for the purpose for which it is erected, is a part of such building, and, therefore, comes within the mechanics' lien law of June 16th, 1836.

2. Heating, laundry and cooking apparatus, including a large stock or soup kettle, furnished as a part of the original construction of a

hotel, as necessary for the use to which the building was to be applied, are subjects of a mechanics' lien under the Act of June 16th, 1836.

February 24th, 1887. Before MERCUR, C. J., GORDON, PAXSON, TRUNKEY, STERRETT and CLARK, JJ. GREEN, J., absent.

ERROR to the Court of Common Pleas of *Wayne county:* Of January Term 1887, No. 285.

*Scire facias sur* mechanics' lien, wherein E. H. Cook Co., Limited, were plaintiffs, and William H. Dimmick, owner, or reputed owner and contractor, was defendant.

The claim, as filed by the plaintiff, was for materials purchased and placed in the Irving Cliff Hotel, in accordance with entire special job contracts made between said E. H. Cook & Co., Limited, and said William H. Dimmick, within six months last past. The amounts of said special job contracts, the subject matter, and dates thereof, being as follows—viz.:

| | |
|---|---:|
| May 30th, 1885. Steam heating apparatus and engine, and placing same in the building in accordance with a special contract, | $1,704 |
| May 30th, 1885. All laundry apparatus, and placing same in building, in accordance with a special contract, | 1,235 |
| May 30th, 1885. Ranges and all cooking apparatus, and placing same in building, in accordance with a special contract, | 970 |
| June 23d, 1885. Steam pump and pipe by special contract, | 492 |
| July 14th, 1885. Stock kettle by contract, | 75 |
| Total, | $4,476 |

All of said special contracts being made and performed, and all of said materials being furnished as aforesaid, within six months last past, for and about the construction and upon the credit of the building hereinafter described.

Said building being a frame building, consisting of a main part and two wings; said main part being three stories high, and 185 feet long by 40 feet deep; the northern wing being partly three and partly four stories in height, and 32 by 38 feet; and the southern wing being partly three and partly four stories in height, and 84 by 38 feet. Said building being known as the Irving Cliff Hotel.

By a paper filed it was agreed by the parties that trial by jury be dispensed with, and that the case be submitted to the decision of the court. The issue to be tried to be, as issue of law and of fact, whether the building is subject to the lien as filed, and what payments, if any, have been made; and the

court to determine for how much, if anything, said building is subject to said lien, and enter judgment accordingly.

The court, SEELY, P. J., found as matters of fact:

1. In 1884 William H. Dimmick commenced the erection of a building for the purpose of a summer hotel, which was completed in the summer of 1885.

2. On the 30th of May, 1885, while the erection of this building was in progress, Mr. Dimmick contracted with E. H. Cook & Co., the plaintiffs, "to furnish and set complete a first-class, high-pressure, steam heating apparatus," for this hotel. The boilers were to be set in solid masonry, with steam pipes to be placed through the building, connecting the boiler with twenty-three radiators, with all necessary fittings, etc. All horizontal pipes were to be suspended in welded coil chain, or with rings or rods, so as to be secure from expansion. For furnishing and setting this heating apparatus plaintiffs were to receive the sum of $1,704. They did furnish and set this apparatus and the compensation agreed upon therefor constitutes a portion of the claim filed in this case.

3. On the same day, by a separate contract, Mr. Dimmick contracted with the plaintiffs for laundry apparatus—to wit: One standard Cambridge make washer; one 20 inch centrifugal wringer; one 60 inch steam mangle; one five gallon copper jacket starch kettle; one No. 13 cuff and collar ironer; for the consideration of $970.

. This apparatus was placed in the building without being in any way fastened in any location, but set simply loose on the floor. It was at one time connected by belts with some shafting and pulleys, so that it could be operated by steam power. The belting was subsequently, before the winter, removed.

4. On the same day, by another separate contract, Mr. Dimmick contracted with the plaintiff for "One improved French range, 20 feet long, with five fires and five ovens; one 36 inch charcoal broiler and base; three vegetable steamers, with baskets and covers; one 100 gallon boiler with 45 feet of one inch copper pipe, in stand; one 16 foot carving table 25 feet wide, on stand, heated by steam, with square tin meat dishes and covers and vegetable and soup dishes; one galvanized iron plate warmer, 6 feet long, 24 inches wide, on iron stand, with four sheet iron shelves and necessary pipes for heating; one set 10 gallon copper coffee, tea and water urns, double body, with guage and draw off cocks." All this for the consideration of $1,235.

This apparatus was placed in the building in condition for use, by the plaintiffs; all necessary connections of steam pipes being made by the plaintiffs. The evidence is not clear, but we think we should infer from it that all this apparatus, except

the range and charcoal broiler, was so connected. These vegetable steamers, etc., are connected so as to cook by steam, or they could be put on the range, and used as parties saw fit.

5. This heating, laundry and cooking apparatus was not completed by the time agreed upon—viz.: Heating apparatus by July 15th; laundry and cooking apparatus by July 1st. But it was all completed by the latter part of July or first of August, and before the building was ready for occupancy.

6. Some time after making the agreements above mentioned, Mr. Dimmick contracted with the plaintiffs to put in a steam pump and pipes for the consideration of $492. The date of this contract does not appear. Mr. Hartung, who superintended the work upon the hotel, testifies that " the pump was put in after; it was not part of the original contract; we knew nothing about it until Mr. Dimmick had made the arrangement." Mr. Dimmick testifies, " The contract for putting this pump in was done after all the other contracts were entered into. It was an after consideration entirely." This pump was located at a spring, some 800 to 1200 feet from the hotel, and was to be operated by steam conducted by pipes from the hotel, and its purpose was to force water from the spring to the hotel. Connections were so far made that the pumps were put in operation and forced the water into or near the house. Some part of these connecting pipes were laid under ground, and some were only temporarily laid, it being considered unadvisable to have permanent connections made to remain through the winter, and before winter the pipes were disconnected.

7. Under another separate agreement with Mr. Dimmick, the date of which is not shown, the plaintiffs furnished a stock kettle, or soup kettle, for which they were to receive $75.

All the information we have about this kettle is from Mr. Dimmick, who testifies : " This stock kettle is a soup kettle, located in the kitchen. It is a brass kettle. It sets right in the corner of the kitchen, for the purpose of cooking soup. It is heated either by steam or from the range. I really don't know whether it is heated by the range or from the steam." This statement indicates that this kettle is permanently located in the corner of the kitchen, and it necessarily follows that whether heated from the range or the steam apparatus, it must be connected with one or the other of them by pipes, or by some arrangement conveying heat.

8. Mr. Dimmick paid $176.44 for freight for these plaintiffs, for which he is entitled to credit against their final account.

The contracts for the heating apparatus, laundry apparatus, and cooking apparatus, were made all at the same time.

[Dimmick v. Cook & Co.]

As to the steam heating apparatus, we have no doubt. It is entitled to the benefit of the mechanics' lien.

The laundry and cooking apparatus is, from its size and manner of construction, practically useless except for a building of large dimensions, constructed for hotel purposes, and we think the circumstances permit no other conclusion than that when Mr. Dimmick contracted for this work he did so with the belief that they were required for the completion of the hotel, and that they would remain permanently with and attached to, as a part of the structure itself.

We do not see why the soup or stock kettle, must not be classed with all the other cooking apparatus.

The pump, located at a spring, some 800 feet from the house, furnished as " an after consideration," under a separate and later contract, does not seem to us under any rule entitled to a lien.

The sum of $176.44, paid by Mr. Dimmick for freight, not having been appropriated to any specific portion of plaintiff's claim by either of the parties, must, we think, now apply to the unsecured portion of the claim—viz.: The consideration for the pumps, for which no lien is sustained: See Garrett's Appeal, 100 Pa. St., 597.

In accordance with the above findings of fact and conclusions of law, we find that the plaintiff is entitled to judgment upon his *sci. fa. sur* mechanics' lien in this case for the sum of four thousand one hundred and forty-three and thirty-six one-hundredths dollars, being for—

| | |
|---|---:|
| Heating apparatus, | $1,604.00 |
| Laundry apparatus, | 970.00 |
| Cooking apparatus, including stock kettle, | 1,310.00 |
| Interest 8 months, | 159.36 |
| | |
| Total, | $4,143.36 |

Now April 21st, 1886, the prothonotary is ordered to file the findings and conclusions, and forthwith notify the parties, or their attorneys, and if no exceptions are filed thereto within thirty days after service of said notice, he will enter judgment in favor of the plaintiff for the said sum of four thousand one hundred and forty-three dollars and thirty-six cents, with interest from this day.

The defendant filed exceptions to the findings of fact and the conclusions of law of the court, which after hearing were dismissed and judgment entered against the defendant in the sum of $4,143.36. The defendant thereupon took this writ and filed the following assignments of error:

The court erred—1. In holding that the building was subject to a lien for the steam heating apparatus, and in directing

that judgment be entered against defendants for the price thereof.

2. In holding that the building was subject to a lien for the laundry apparatus, and in directing that judgment be entered against defendants for the price thereof.

3. In holding that the building was subject to a lien for the range and cooking apparatus, and in directing that judgment be entered against defendants for the price thereof.

4. In holding that the building was subject to a lien for the stock kettle, and in directing that judgment be entered against defendants for the price thereof.

*H. Wilson* (*W. H. Dimmick* with him), for plaintiff in error. —There is no Act of Assembly giving a lien, specifically, for any of the materials furnished for the building in the present case. The nearest approach to this is the Act of 1855, giving a lien for " the erection of grates and furnaces," and the plaintiff below seeks to extend this to steam heating apparatus.

If a building can be subjected to a lien for everything necessary to fit it for the purpose for which it is designed, the mechanics' lien law is without limit. All buildings are designed for the purpose of occupancy, and to fit them for this they must be furnished with everything necessary for the purposes of the occupants. These include not only steam heating, laundry and cooking apparatus, but stoves, chairs, tables, beds, bedding, mirrors, sofas, and a great variety of other articles. If a lien cannot be created for all these, where is the line to be drawn ?

If a lien can be sustained for laundry and cooking apparatus, on the ground that they are peculiarly necessary for the purposes of a hotel, it must also be given for many other articles equally necessary. If for carving tables, then also for dining tables, for parlor tables, reading-room tables, etc. Chairs and carpets are as necessary as tables ; and bedroom furniture is equally indispensable. Billiard tables also must be included as an essential part of the equipment of a hotel. A bar is still more necessary for the purpose for which a hotel is designed. A lien must therefore be given for beer pumps, decanters, glasses, and bar furniture generally. In fact, granting the principle, a lien can be denied to nothing, from the foundation walls to the cuspidors.

But there is nothing in the law to warrant any distinction between a hotel and a private residence, as to the lien for materials. If a lien may be given for laundry and cooking apparatus for a hotel, it must also be given for the like apparatus for a private house. In the latter case, the apparatus may be of much smaller dimensions ; but this will not change

the principles.  If purpose is to be made the test, the purposes of a private residence are as much within the law as the purposes of a hotel.  The only safe and certain rule is to give a lien only for materials entering into the erection and construction of the building, and deny it for chattels designed for use in the building after its erection and construction are complete.

*George G. Waller* for defendant in error.—In so far as the steam heating apparatus and engine are concerned if they are not covered by the Act of April 14th, 1855, extending liens to plumbing, gas fitting, and furnishing and erection of grates, and furnaces, they are covered by the Act of 1836.

The materials for which a lien is filed were necessary for the use of the building as a hotel, for which purpose the building was erected.  They were so attached that they would necessarily pass with the realty.  They are therefore subjects of a lien under the Act of June 17th, 1836: Ege *v.* Kille, 3 Norris, 333; Morris' Appeal, 7 Id., 368; Justice *v.* Nesquehoning Valley R. R. Co., 6 Id., 28; Seeger *v.* Pettit, 27 P. F. S., 437; Schenck *v.* Ubre, 31 Id., 31; Hill *v.* Sewald, 3 Id., 271.

Mr. Justice PAXSON delivered the opinion of the court March 14th, 1887.

This was a *scire facias* upon a mechanic's claim.  The articles in dispute consisted of heating, laundry, and cooking apparatus, including a large stock or soup kettle.  The building in which they were placed was a large hotel, and they were a part of the original construction of said building, the contracts therefor having been made while it was being erected.  They were not temporary fixtures such as a tenant would place in the building for his own convenience, but were permanent in their character and placed there by the owner as necessary for the use to which the building was to be applied.

Neither the Act of 1836 nor any of its supplements gives a lien specifically for the articles above mentioned.  The nearest approach to it is the Act of 1855, which gives a lien for " the erection of grates and furnaces."  The heating apparatus, however, in this case did not consist of either grates or furnaces, but of boilers with steam pipe running through the building.  Much less could grates and furnaces be held to include laundry and cooking apparatus.

We are of opinion however that this claim can be sustained under the Act of 16th June, 1836.  By the first section of said Act it is provided that " Every building erected within the several counties of this commonwealth . . . . . shall be subject to a lien for the payment of all debts contracted for

[Miles *v.* Lewis and Barrowman.]

work done or materials furnished for or about the erection or construction of the same."

It has always been conceded that for engines and machinery, constituting a part of a new mill, there was a lien under the Act of 1836; but if placed in the mill, or about it, and no constituent part of the erection, they were not within the lien laws: Summerville *v.* Wann, 37 Penn., 182. The test is whether they are a part of the original erection, and necessary for the purposes for which the building was intended.

This was a large hotel, capable of accommodating two hundred guests. For such a building permanent apparatus for heating, washing and cooking are as essential as are engines and boilers in a mill. It is true you can eat, wash and cook without them. So you can grind flour and saw lumber by hand, but the world has outgrown such a mode of doing business and it is proper that both legislative and judicial decision should keep abreast of the times. A building with only walls and a roof is neither a hotel nor a factory. It is a building, nothing more. When a man constructs a building for a hotel, everything of a permanent character, which will pass as a part of the freehold, and which is reasonably necessary to equip it for the purpose for which it is erected, is a part of such building and therefore comes within the Act of 1836. This has often been said before and we now repeat it.

Judgment affirmed.