#### OF THE

## STATE OF ARIZONA.

From November 28, 1919, to November 24, 1920.

---

[Civil No. 1722. Filed November 28, 1919.]

[184 Pac. 992.]

## INDEPENDENT MEAT COMPANY OF JEROME, a Corporation, Appellant, v. CRANE COMPANY, a Corporation, Appellee.

1. MECHANICS' LIENS—LIEN DEPENDENT UPON MACHINERY BECOMING PART OF IMPROVEMENT.—To come within Civil Code of 1913, paragraph 3639, and entitle a materialman to claim and enforce a mechanic's lien against the owner for machinery furnished, it must appear that the same became a part of the construction, erection, or completion of the improvement, and became fixtures to the realty or machinery necessary in accomplishing the construction of the improvement.

2. MECHANICS' LIENS—WAIVER BY RETENTION OF TITLE TO MACHINERY FURNISHED.—A clause reserving title to machinery in the party contracting to furnish it until paid for *held* to indicate no intention to release the property furnished from the statutory mechanic's lien after it became permanently affixed to the building.

3. MECHANICS' LIENS—WAIVER BY REQUIRING PAYMENT IN ADVANCE FOR OTHER MATERIALS.—Neither one contracting to furnish machinery and supplies for completing and equipping a plant, nor the party furnishing to such contractor the materials, would waive their right to claim a materialman's lien for the machinery and

---

1. Necessity that materials for which mechanic's lien is claimed be incorporated in structure, notes, 13 **Ann. Cas.** 13; 19 **Ann. Cas.** 588; **Ann. Cas.** 1913B, 502.

2. Waiver of mechanic's lien by contract inconsistent with lien, note, 1 **Ann. Cas.** 954.

supplies furnished which were not paid for, by requiring payment in advance for other like machinery and supplies furnished for the same improvement by shipment C. O. D.

4. MECHANICS' LIENS—RIGHT OF MATERIALMAN FOR MATERIAL FURNISHED INSTALLED BY ANOTHER.—One furnishing machinery and supplies to one under contract to install them in a slaughterhouse, cold storage, and ice plant was a materialman, and had the right after they became fixtures and part of the realty to a lien therefor under Civil Code of 1913, paragraph 3639.

5. MECHANICS' LIENS—PARTY CONSTRUCTING IMPROVEMENT AS AGENT OF OWNER FOR PURPOSE OF LIEN.—In view of Civil Code of 1913, paragraph 3639, stating that a person having charge or control of the construction of the whole or part of the building shall be held to be the agent of the owner for the purpose of giving a materialman a lien, one contracting to sell and install machinery became the owner's agent, so that one of whom he bought materials had a right to a lien; the owner being protected under paragraph 3650, and by requiring the contractor to give bond.

6. APPEAL AND ERROR—TRIAL—ORDER OF INTRODUCING EVIDENCE DISCRETIONARY.—The order of introducing evidence at trial is largely, almost exclusively, in the sound legal discretion of the trial judge, and will not be ground for reversal, where the record does not show abuse of such discretion.

APPEAL from a judgment of the Superior Court of the County of Yavapai. John J. Sweeney, Judge. Affirmed.

### STATEMENT OF FACTS.

The appellee, as plaintiff, commenced this action against the appellant and another party known as Horstmann & Plomert, to recover the value of certain machinery furnished said Horstmann & Plomert, to be used in and about a cold storage and ice manufacturing plant constructed for appellant, and to declare and fix a materialman's lien on the said plant, and a foreclosure of the said lien.

The cause was tried by the court, and judgment was rendered in favor of the plaintiff for the amount of its claim, a lien in its favor was found and fixed on the property described in the complaint, and a decree foreclosing such lien was rendered with the usual order of sale in its satisfaction. From which

decree, finding, and order, the defendant Independent Meat Company appeals.

Messrs. Anderson & Ellis, for Appellant.

Messrs. Mitchell & Linney and Messrs. Clark & Clark, for Appellee.

CUNNINGHAM, C. J. (After Stating the Facts as Above.)—The controverted question in this case is whether Crane Company is given the right under the statute to claim a lien for the machinery and supplies it furnished Horstmann & Plomert, and which they actually used in the improvement in question. The appellant states the question as follows:

"Was the contract between Horstmann & Plomert and the Independent Meat Company a contract for the sale of the machinery and supplies therein mentioned, or was it such a contract as made Horstmann & Plomert contractors within the meaning of paragraph 3639 (Civ. Code Ariz. 1913)?"

Appellant says that—

"A construction of this contract determines the merits of this appeal. . . . "

And it contends that upon a proper construction of the contract mentioned the appellee, Crane Company, cannot be considered as a party entitled to a lien under said paragraph 3639, for the reason that Crane Company furnished the machinery and supplies to Horstmann & Plomert on a contract of sale, and that Horstmann & Plomert resold the same to appellant Independent Meat Company; that under said contract Horstmann & Plomert were the sellers of the machinery and supplies to the Independent Meat Company, and not a contractor on the construction of appellant's plant, and as such contractor the machinery and supplies were purchased by it from Crane Company for the owner of the improvement.

The machinery and supplies involved were furnished by Crane Company at the request of Horstmann & Plomert, were actually used in the plant, and were reasonably worth the amount claimed. Crane Company, in due time, served, filed, and recorded a notice of its claim of a lien under the provisions of the lien statutes, alleging in such notice that it furnished such machinery and supplies to Horstmann & Plomert as the contractor employed by the appellant Independent Meat Company "to install such ice-making and refrigerating machinery and power plants." The said notice further alleges that the said machinery and supplies "were furnished under an oral understanding and agreement with the said Horstmann & Plomert that Crane Company would furnish materials as ordered and charge the reasonable value thereof; that, except as above stated, there were no terms, time given or conditions agreed upon."

The answer denies that Horstmann & Plomert were contractors to furnish the machinery and supplies, but alleges that they were materialmen, and, as such, contracted to sell and install the said machinery and supplies in Independent Meat Company's building as it was being then constructed.

Upon this issue of fact, the trial was had, and judgment for Crane Company followed. The contract between Independent Meat Company and Horstmann & Plomert was in writing. We quote portions that are applicable to the questions raised in this lawsuit, omitting formal language of an advertising nature and the portions setting forth the specifications of the items to be furnished. The instrument is in the form of a communication addressed to Independent Meat Company, of Jerome, and says:

"We propose to furnish you one Frick Company's . . . double cylinder . . . ammonia compressor and

appurtenances, for your slaughter-house in Jerome, Arizona, etc. . . . All in accordance with the following specifications . . . (giving specifications for the machinery to be used in the slaughter-house). . . .

"Horstmann & Plomert will furnish one skilled erecting engineer with tools to erect and put the machinery furnished under this contract into operation, who will remain for a period of three days after completion of the installation of each plant to make needed adjustments, etc., and to give instructions in the care and operation of the machinery. If the installations come up to contract in performance and otherwise purchaser will then accept the same as a fulfillment of the contract, subject only to the guaranty of workmanship and materials as hereinbefore contained; if they do not comply Horstmann & Plomert are to have a reasonable time within which to remedy defects or deficiencies, which shall correspondingly postpone the time of payment. If Horstmann & Plomert fail to make the machinery comply as aforesaid, they are to remove it and refund all payments with interest thereon, which is to end the whole transaction and all liability of both parties under this contract. In any event, if the parties hereto fail to agree amicably, Horstmann & Plomert are to have the privilege, if they so elect, to remove the machinery and refund the payments with interest as full and final settlement of the whole transaction.

"Horstmann & Plomert will furnish to purchaser the services of a competent working construction foreman to take charge of the construction of the cold storage room, chill room and cold storage box, as referred to in these specifications, and of such other carpenter, construction, and installation work as purchaser may direct.

" . . . [Provision for the payment of the foreman's wages by the purchaser, which payments and wages are in addition to the contract price as mentioned.]

"Horstmann & Plomert will furnish all necessary working drawings and details for the construction of all refrigerating and chill rooms of cooling towers, also drawings showing general arrangement of both plants.

"Purchaser is to build all foundations, do all insulating, carpenter and woodwork of every description; make provisions for carrying off waste and drip, provide suitable openings into the buildings for the admission of the machinery, and openings in walls and partitions for pipe lines.

"Horstmann & Plomert guarantee workmanship and material for one year, natural wear, tear, and accident excepted, provided the machinery is properly operated in accordance with their instructions, and in case any damage be caused by any material or workmanship proving defective their liability to be limited to repairing such defects or furnishing duplicate parts, free of charge, f. o. b. Los Angeles, California.

"Purchaser agrees to and will make all cash advances for such disbursements as otherwise would have to be made by Horstmann & Plomert in connection with the delivery, erection and installation of the plant herein specified. Any sum so advanced shall be deducted from the second payment at the time it becomes due.

"The title to said machinery is not to pass to purchaser, but is to remain vested in Horstmann & Plomert until the purchase price is fully paid in cash, and purchaser is to keep the said machinery fully insured in the meantime in solvent insurance companies for the protection of the interest of Horstmann & Plomert therein, and the policies therefor to be delivered to them. All loss by fire and other casualties for which Horstmann & Plomert are not indemnified and paid under such policies of insurance, to be borne by the purchaser on and after the arrival of said machinery and apparatus, or any part thereof, at Clarkdale, Arizona.

"Horstmann & Plomert are not to be liable for any delays caused by fire, element, rebellion, riot, strikes, labor troubles, civil commotion, unusual delay in transportation, or any other matters beyond their control; nor are they to be bound in any way by any *ex parte* test made by purchaser of any part of the machinery. . . .

"Purchaser agrees to and will pay Horstmann & Plomert for said machinery and apparatus the sum of forty-nine hundred dollars in U. S. gold coin as

follows: [Providing for the payment of three install-
ments.]

"All previous communications, provisions, agree-
ments or contracts, verbal or written, not contained
herein, are mutually abrogated and withdrawn, and
no modification of this agreement shall be binding
upon the parties, or either of them, unless such modi-
fication be in writing, duly accepted by purchaser and
approved and accepted by Horstmann & Plomert.

"This order and contract is not binding until ap-
proved and accepted by Horstmann & Plomert at
their office, Los Angeles, California."

The instrument is signed by parties and approved
and accepted by Horstmann & Plomert at their office
in Los Angeles.

The credit man for Crane Company saw and was
given the opportunity to examine the foregoing in-
strument before the machinery and supplies were
furnished by it to Horstmann & Plomert for the im-
provement. The machinery and supplies were fur-
nished without question or doubt for the purpose and
with the intention of performing the terms and con-
ditions of that contract.

In order that Crane Company come within the stat-
ute as a party entitled to claim and enforce a
mechanic's lien against the owner of the improvement
for the payment of its claim for the said machinery
and supplies furnished in the circumstances for the
purpose and with the intention apparent from the
record, the fact must appear that the machinery and
supplies furnished became a part of the construction,
erection, or completion of the improvement. The
statute relied upon as giving the lien is as follows
(paragraph 3639, Civ. Code 1913):

"Every person, firm or corporation who may labor
or furnish materials, machinery, fixtures or tools to
be used in the construction, alteration, erection, re-
pair or completion of any building or other structure
or improvement whatever shall have a lien on such

house, building, structure or improvements for the work or labor done or materials, machinery, fixtures or tools furnished, whether said work was done or articles furnished at the instance of the owner of the building, or improvement, or his agent. The lien herein provided shall extend to the lot or lots of land necessarily connected with the building, structure or improvement made or erected; and every contractor, subcontractor, architect, builder or other person having charge or control of the construction, alteration, or repair, either in whole or in part, of any building or other structure or improvement, shall be held to be the agent of the owner for the purposes of this chapter, and the owner shall be liable, under the terms thereof, for the reasonable value of labor or materials furnished to an agent.''

The plaintiff's action is prosecuted on the theory that the machinery and supplies furnished by it, Crane Company, was, in fact, material furnished and used in the construction of the slaughter-house improvement. No lien arises for machinery furnished for a designated plant unless the machinery becomes a part of the construction, erection, alteration, or repair of the building, and the articles furnished become fixtures to the realty, or the machinery is a necessary appliance in accomplishing the construction of the improvement.

''The sale of the machinery to the owner of the mill, and the mere placing it in the mill, do not give rise to a mechanic's lien for it. But it is immaterial, so far as concerns the attaching of the lien, whether the building for which the machinery is supplied is in process of erection or has already been completed. Whether machinery is a fixture for which a lien arises upon the premises is to be tested by the inquiry whether it is so attached to the realty as to become a fixture and the further inquiry whether the machinery is adapted to the purposes for which the building was intended to be used or is used.'' 2 Jones on Liens, § 1335.

"Whether an article is furnished for the construction, alteration, or repair of a building, and is so attached to it as to become a part of it, is a mixed question of law and fact. . . . Whether a thing is a fixture depends largely upon the intention with which it is affixed to the realty; whether it is attached as a permanent fixture to the realty or not." 2 Jones on Liens, § 1341, and cases cited.

No party to this transaction has denied that the machinery actually furnished by Crane Company to Horstmann & Plomert was intended for other than to become a permanent part of the slaughter-house building, and, as such, a fixture unless a test use proved it defective or unsatisfactory to the contracting parties. The fact is the machinery was, upon test, entirely satisfactory, and remains a permanent fixture, and part of the structure as it was installed by Horstmann & Plomert.

In the Horstmann & Plomert contract with appellant, the following stipulations appear:

"The title to said machinery is not to pass to purchaser, but is to remain vested in Horstmann & Plomert until the purchase price is fully paid in cash, and purchaser is to keep the said machinery fully insured in the meantime . . . for the protection of the interest of Horstmann & Plomert, . . . etc." And, "If Horstmann & Plomert fail to make the machinery comply as aforesaid, they are to remove it and refund all payments with interest."

The appellant, after quoting the above, says, in argument that—

"The foregoing, as well as the whole contract, shows that the machinery, by intention of the parties, and in fact, is not a fixture, but is personal property, which was sold by Horstmann & Plomert to Independent Meat Company."

2 Jones on Liens, section 1340, has the following comment to make on such clause in a contract:

"A provision in a contract for furnishing machinery that the same shall remain the property of the vendor until paid for does not prevent such machinery from becoming fixtures when attached as such to a mill, nor does it prevent the vendor from enforcing a lien for the same"—citing *Case Mfg. Co.* v. *Smith* (C. C.), 40 Fed. 339, 5 L. R. A. 231; *Cooper* v. *Cleghorn*, 50 Wis. 113, 6 N. W. 491; *Great Western Mfg. Co.* v. *Hunter*, 15 Neb. 32, 16 N. W. 759; *Warner Elev. Mfg. Co.* v. *Capitol Invest. etc. Assn.*, 127 Mich. 323, 89 Am. St. Rep. 473, 86 N. W. 828.

In *Clark* v. *Moore*, 64 Ill. 273, reading page 280, the court commented as follows:

"In their effort to retain a lien on the machinery furnished by appellees, they took no collateral or independent security. It was but a futile effort to retain a superior lien on the property furnished over and above other lienholders. Had these parties taken a mortgage on these lots and the building, which the law would have adjudged void, would anyone claim that they could not assert their lien? The lien attaches to and incumbers the property to improve which the material is furnished, and the efforts to acquire a more specific and exclusive lien thereon in no wise manifests an intention to release the property from all lien and to look to other security for payment, but it shows the very opposite intention—an intention to hold, if possible, the property furnished liable for the payment of their claim."

I am satisfied that the clause in this contract, wherein Horstmann & Plomert stipulated to retain the title to the machinery until it was paid for in cash, thereby intended to hold, if possible, the property furnished liable for the payment of their claim, and they no wise intended by such stipulation to release the property furnished from their statutory mechanic's lien.

Whether Horstmann & Plomert could have removed the machinery because it was not paid for is a moot question in this case, because no effort was

made by any party to exercise the right given in the contract. The property remains as it was placed, and we must treat it as we find it. It was placed in the slaughter-house as part of the plant, and intended to remain such part of the plant unless removed because of some stipulation of the contract under which it was furnished; and, no effort having been made to enforce the stipulation and remove the machinery, we must determine that the original intention prevails, and the machinery is affixed permanently to the building, as a part thereof.

The defendant offered to show that a part of the machinery and supplies shipped by Crane Company to be used in the building were shipped "C. O. D." to Independent Meat Company, with bill of lading attached. The draft accompanying the shipment was paid in each instance by the consignee.

The contract contains the following:

"Purchaser agrees to and will make all cash advances for such disbursements as otherwise would have to be made by Horstmann & Plomert in connection with the delivery, erection, and installation of the plant herein specified. Any sum so advanced shall be deducted from the second payment at the time it becomes due."

To a certainty, if all of the machinery and supplies sold by Crane Company to Horstmann & Plomert, and which was used in the said building, had been shipped to Independent Meat Company with draft attached to bill of lading, and by the Independent Meat Company paid, Crane Company would have no grounds to base their claim upon. But, as we understand the record, the items paid C. O. D. by Independent Meat Company are not included in Crane Company's account. Neither Crane Company nor Horstmann & Plomert would waive their right to claim a lien for machinery and supplies furnished which were not paid, by requiring payment in ad-

vance for other like machinery and supplies furnished for the same improvement. Crane Company's failure to require payment "C. O. D." for all machinery and supplies seems to be the parent of this lawsuit.

The foregoing reasons and authorities support the position satisfactorily that the machinery and supplies became, in law, a part of the slaughter-house structure and plant, being fixtures furnished and installed as such; that the party who furnished such fixed machinery and supplies to the owner of the slaughter-house improvement was, under the statute, a materialman, and, unless the reasonable value of same is paid, is entitled to fix and enforce a mechanic's lien given such parties by paragraph 3639, *supra.*

Under the clear terms of the contract, Horstmann & Plomert undertook to furnish the said machinery and supplies and install the same permanently in the building for a definite sum and price, including the reasonable value of the machinery and supplies, and the work of installation. In the meaning of the mechanic's lien law, Horstmann & Plomert agreed for a fixed sum and price to erect a portion of the appellant's slaughter-house building, in so far as the proper installation of the machinery and supplies in question served to enter into such construction.

Under such agreement, Horstmann & Plomert necessarily had charge of and control over that part of such construction as had reference to the installation of the said machinery—that part of the construction which caused the machinery to become a permanent fixture and a part of the freehold. See *Dimmick* v. *Cook*, 115 Pa. 573, 8 Atl. 627; *Siegmund* v. *Kellogg-Mackay-Cameron Co.*, 38 Ind. App. 95, 77 N. E. 1096; *Scannell* v. *Hub Brewing Co.*, 178 Mass. 288, 59 N. E. 628.

Again referring to the lien statute, paragraph 3639, *supra,* we find there the declaration that—.

"Every contractor, subcontractor, architect, builder or other person having charge or control of the construction, alteration, or repair, either in whole or in part, of any building or other structure or improvement, shall be held to be the agent of the owner for the purposes of this chapter, and the owner shall be liable, under the terms hereof, for the reasonable value of labor or materials furnished to an agent."

It seems too clear for argument that the written contract entered into by and between Horstmann & Plomert and Independent Meat Company gave and was designed to give Horstmann & Plomert charge and control of a part of the construction of the slaughter-house. So construed, they thereby became, for the purposes of the mechanic's lien laws, the agent of the owner for the purposes of extending to the Crane Company a lien for the materials furnished such owner on the order of such owner's agent, Horstmann & Plomert.

The appellant cites *Gates Iron Works* v. *Cohen,* 7 Colo. App. 341, 43 Pac. 667, *Bryson* v. *McCone,* 121 Cal. 153, 53 Pac. 637, and *John A. Roebling Sons Co.* v. *Humboldt Electric Light & Power Co.,* 112 Cal. 288, 44 Pac. 568, as authority for holding that Horstmann & Plomert, under their contract with Independent Meat Company, were materialmen and not contractors, and as such Crane Company sold them the machinery in question on their credit as such materialmen. The *Roebling Sons Co. case,* 112 Cal. 288, 44 Pac. 568, seems to so hold under the California statute as it then existed. But our statute is sufficiently broad in its terms to give the seller of material a lien on the real property in which the articles are used and become a part, whenever the articles are furnished for that purpose on the order of the owner or his agent, and for the purposes of

the lien law, any person having charge or control of any part of the construction, alteration, or repair of any building or other structure or improvement becomes the agent of the owner of such improvement for the purpose of fixing a lien in favor of the seller furnishing the articles.

It is not a question of whether the party ordering the articles is a contractor, but under our statute an inquiry goes no further than to determine whether the party who ordered the articles is, in the mechanic's lien law the agent of the owner; if so, the owner is liable for the reasonable value if the articles so furnished became incorporated in the structure for which they were intended.

Paragraph 3650 provides for the procedure and liabilities in case a "lien shall be filed or notice given under the provisions of this chapter, *by any person other than a contractor.*" In such case, "it shall be the duty of the contractor to defend any action brought thereupon at his own expense; and during the pendency of such action the owner may withhold from the contractor the amount of money for which such lien shall be filed as aforesaid, and in case of judgment against the owner or his property, upon the lien, he shall be entitled to deduct from any amount due and to become due by him to the contractor as aforesaid, the amount of such judgment and costs, and if he shall have settled with the contractor in full, or if such an amount shall not be owing to the contractor, such owner shall nevertheless be entitled to recover back from the contractor and his bondsmen the amount so paid by him, for which the contractor was originally the party liable.

The owner is protected or he may provide for ample protection from liens for articles furnished those who are in charge of or in control of an improvement erected on his premises at his instance. The facts in evidence amply support the judgment.

The other questions raised in appellant's assignments relate mainly to the order of introducing evidence at the trial. The order of proof is largely, almost exclusively, in the sound legal discretion of the trial judge. We see in this record no grounds for disturbing the judgment because of an abuse of such discretion. The other questions have been carefully examined, but we find no reversible error in the record.

Judgment affirmed.

ROSS and BAKER, JJ., concur.